RAWLS, Chief Judge.
In this child custody case, appellant-father contends that the trial court’s order transferring the custody of the minor child of the parties to appellee-mother is not in the best interest of the child. We agree.
The parties were married on June 19, 1966, and parted company pursuant to a separation agreement which was honored by the trial court in a final judgment entered on February 17, 1972. In the order being reviewed, the trial court found that the custody of the subject minor child, Chandra Toop, was granted to the father based upon a stipulation between the parties, and that “. . . ■ facts which occurred prior to the adjudication on February 17, 1972, are not only material but are essential to the determination of what is in the best interest of the child.” The trial court further stated that it would not have ratified and confirmed the stipulation of the parties insofar as it related to custody had it been apprised of the testimony revealed at the modification hearing.
Extensive testimony was presented to the trial court concerning the mother’s petition for modification. The first witness, a cousin of the mother, testified that the father struck the child with a belt when she was less than a year old; that during the marriage the father would not permit his wife to say or do anything. This witness characterized the father as a “sneak” and stated that he would not feed his wife’s mother while she was living with the couple. Appellee-mother then adduced testimony as to her employment; several fellow waitresses and employees testified that she got along well with her customers, had observed her with her child on several occasions and everything seemed fine and normal. Based on the foregoing testimony, appellee rested her case.
Appellant published the deposition of a medical doctor who had seen appellee on several occasions prior to the dissolution of the marriage. The doctor testified that appellee had complained of sudden, uncontrollable rages and she feared she might harm the child. It was the opinion of the doctor that appellee was schizophrenic; was in need of psychiatric treatment, and without appropriate treatment, her condition would worsen rather than improve. The pastor of a church that appellee attended while the parties were married testified that he had observed from the pulpit appellee slapping the child when she was approximately two years of age. Another witness testified that she had observed the appellee with the child in church, had seen her hit the child with a song book, and bite the child. This witness described appellee as being very emotional and prone to scream at her baby.
Appellant testified at length as to the stable home life he and his present wife were providing for his daughter. He conceded he had used a belt to discipline the child, but in demonstrating to the court urged that it was more in the nature of causing a noise from the two straps of leather in a doubled condition than any force touching the child’s body. After the demonstration by appellant, the court summarized what it had seen as follows:
“. . . [H]e has folded it so that the buckle and the other end are in his hand, and he has wrapped it around his hand one time so that the belt is somewhat in the shape of a loop; and when he hit it against his hand, he caused the lower portion of the belt and the upper portion of the belt to collapse together when it *327 hit his hand. And when he refers to noise, it’s the Court’s interpretation that he means the noise of the two pieces of leather hitting each other.”
Appellant also stated that his parents have a stable home and assist in looking after his child along with the two boys of appellant’s present wife.
Other material testimony centered around the fitness of appellee’s mother to be in charge of the child while appellee was working. The evidence reveals that this lady had been diagnosed as schizophrenic and confined during a considerable portion of the past ten years in the Florida State Hospital at Chattahoochee. She was released in the custody of appellee in 1971 and went to live in a boarding house operated by another witness. The lady who operated the boarding house testified that appellee’s mother was not capable of taking care of anyone. Other testimony impeached the ability of appellee’s mother to care for the child.
At the conclusion of the extensive proceedings, the trial judge stated:
“The Court specifically finds that punishment inflicted upon this child prior to her first birthday by her father, whose weight is in excess of two hundred thirty pounds, by a two and one-half inch belt which had been wrapped around his hand twice, was cruel and inhuman punishment and reflects a material flaw in the thinking of said parent which is detrimental to the best interest of this child.”
The record just does not support the foregoing finding. As stated above, the sole testimony as to this isolated instance of disciplining the child by her father was reviewed by the court and found to be “. . . the Court’s interpretation that he means the noise of the two pieces of leather hitting each other.” Two days later during the course of hearing evidence, the trial judge, upon being asked if he desired to see and talk with the child, stated:
“I would assume that the child is healthy and well-taken care of. I haven’t heard any testimony that Mr. and Mrs. Ballew [appellant’s parents] or the Toops haven’t said, haven’t taken her to the doctor, and that sort of thing . . . .”
Yet, two months later the trial judge found the father to be unfit to continue with the custody of his child.
The manifest evidence found in this record — in fact, the overwhelming evidence is that the trial court erred in entering the challenged order, and that said order is not in the best interest of the child.[1] The subject order is reversed with directions that custody be awarded to appellant.
WIGGINTON and SPECTOR, JJ., concur.

. Hutchins v. Hutchins, 220 So.2d 438(2 Fla.App.1969), cert. denied 229 So.2d 369 (Fla.).